UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA FERRARA,

    Plaintiff,
v.                         Case No. 8:17-cv-2914-T-33AEP

LUXOTTICA RETAIL NORTH AMERICA
INC.,

    Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Luxottica Retail North America Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 16), which was filed on January 12, 2018. Plaintiff Christina Ferrara filed a Response in Opposition to the Motion on January 18, 2018. (Doc. # 17). She separately filed a Declaration in support of her Response (Doc. # 18) on January 23, 2018. For the reasons that follow, the Court grants the Motion to Compel Arbitration and this case will be stayed pending the arbitration process.

**I.**    **Background**

On December 5, 2017, Ferrara filed a Complaint against Luxottica for violations of the Family and Medical Leave Act (FMLA) and the Employee Retirement Income Security Act (ERISA). (Doc. # 1). In response to the Complaint, Luxottica filed the instant Motion to Compel Arbitration.

In the Motion, Luxottica asserts that Ferrara entered into a binding arbitration agreement - the Dispute Resolution Agreement - that covers all of the claims Ferrara brings in this lawsuit. In response, Ferrara claims that she "did not see such an agreement" and did not sign the agreement. (Doc. # 17 at 2).

II. **Discussion**

The Federal Arbitration Act (FAA) "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. (internal quotation and citation omitted).

"State law generally governs whether an enforceable agreement to arbitrate exists." Delano v. Mastec, Inc., No. 8:10-cv-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Id. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983). And, "a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir. 2003).

The Court conducts a two-step inquiry to decide whether the parties must submit to arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1200 (11th Cir. 2004). The first step is to decide whether the parties agreed to arbitrate the dispute. Id. "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the

scope of that arbitration agreement." Fleetwood Enter., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). If the Court determines that the parties agreed to arbitrate, the Court then must assess "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp., 473 at 628.

**A.    Assent to Arbitrate**

"It is well established that parties cannot be forced to submit to arbitration if they have not agreed to do so." Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 Fed. Appx. 782, 785 (11th Cir. 2008). If there is a dispute regarding whether the parties agreed to arbitrate, it is for the Court, rather than the arbitrator, to decide whether there is an agreement. Id.

Ferrara argues that she did not see, receive, or sign the Dispute Resolution Agreement. (Doc. # 17 at 3). She also remarks: "Defendants have offered no evidence concerning the veracity of Plaintiff's alleged electronic signature other than conclusory statements that she reviewed and accepted the alleged arbitration agreements." (Id.). In her Declaration, Ferrara states: "I never signed the arbitration agreement before initiating this lawsuit, and the electronic

signature provided by Defendant is not my own." (Ferrara Decl. Doc. # 18 at ¶ 5).

First and foremost, the Court rejects Ferrara's argument to the extent she may be challenging assent to the Dispute Resolution Agreement based on the presentation of her electronic signature, as opposed to a personally penned signature. In <u>Melver v. Check 'n Go of Florida, Inc.</u>, No. 13-20528, 2013 U.S. Dist. LEXIS 195841 (S.D. Fla. July 22, 2013), the plaintiff sought to avoid arbitration of his employment law claims arguing, among other things, that his electronic signature on an arbitration agreement "is not his and is invalid." <u>Id.</u> at *4. The court compelled arbitration holding: "A signature on a contract may not be denied legal effect, validity, or enforceability solely because it is in electronic form." <u>Id.</u> at *5 (citing 15 U.S.C. § 7001(a)(1); Fla. Stat. § 668.004). The Court thus rejects the argument that Ferrara's electronic signature is invalid.

The Court also rejects Ferrara's argument that she did not see or sign the Dispute Resolution Agreement. "The party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." <u>Brueggemann v. NCOA</u>

Select, Inc., No. 08-80606, 2009 U.S. Dist. LEXIS 55296 (S.D. Fla. June 30, 2009)(quoting Wheat, First Secs., Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993)). As noted, Ferrara generally denies that she signed the Agreement. This, by itself, fails to invalidate the Agreement. Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 855 (11th Cir. 1992)("A party cannot place the making of an arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable."); compare Williams v. MetroPCS Wireless, Inc., No. 09-22890, 2010 U.S. Dist LEXIS 5826 (S.D. Fla. Jan. 5, 2010)(denying motion to compel arbitration because defendant phone company did not require any written contract for phone services, plaintiff was never shown a contract, and plaintiff never signed any contract).

Luxottica, on the other hand, has provided a detailed and factually supported catalogue of evidence in support of its contention that the instant lawsuit is subject to a binding and assented to arbitration agreement. The record reflects that Ferrara began working for Luxottica on September 27, 2016. (Doc. # 1 at ¶ 16). On October 8, 2016,

Ferrara completed Luxottica's "onboarding process" which included reviewing documents contained in Luxottica's "New Hire Kit for US Optical Associates." (Abbinate Decl. Doc. # 16-1 at ¶ 4). During this process, Ferrara was instructed to review and acknowledge the Luxottica Associate Guide through Luxottica's online site "Eye Grow" or a paper copy. (Id.). The Guide is a 47-page document, which has been provided to the Court in full. (Doc. # 16-3). The Guide contains several "Agreements." One such Agreement is the "Dispute Resolution Agreement." That Agreement is found on page 43 of the Guide. (Doc. # 16-3 at 43-44). The Dispute Resolution Agreement is written in clear and plain terms and includes lawsuits against Luxottica for violations of the FMLA and ERISA. (Id. at 44). The Guide also contains an "Opt-Out of Dispute Resolution Agreement" that provides Luxottica employees the opportunity to opt-out of the Dispute Resolution Agreement. (Id. at 47).

The Eye Grow site can only be accessed by a login identification number called a Lux ID, which is a six digit number unique for each employee, and a password set by the employee. (Id. at ¶ 5). Luxottica maintains records of

employees' receipt, review, and acknowledgment of materials. (Id. at ¶ 5).

During her review of the Guide in Eye Grow, Ferrara was able to review the Dispute Resolution Agreement and the opt-out form. (Doc. # 16-3). A copy of Ferrara's acknowledgment that she had the opportunity to review the Dispute Resolution Agreement has been provided to the Court. (Doc. # 16-5). Her employment records show that Ferrara acknowledged that she was "given the opportunity to review" the Dispute Resolution Agreement. (Id.). And, the employment records show that Ferrara did not exercise her option to out-out of the Dispute Resolution Agreement. (Abbinate Decl. Doc. # 16-1 at ¶ 11).

Importantly, Ferrara attached her electronic signature to the following statements (and her employment was conditioned upon her agreeing as such):

> I acknowledge that I have received and read, and that I understand and agree to the terms of, the following Agreements as set forth in the Associate Guide Confidentiality Agreement and Non-Solicitation Agreement, Inventions Agreement, **Dispute Resolution Agreement**, Release of Likeness, Voice and Name Agreement and Electronic Protected Health Information (ePHI) Policy Agreement. Except as provided in the following sentence, I acknowledge and agree that my employment with the Company is conditioned upon my acceptance of these contractually binding agreements. Consistent with

> the terms of the Dispute Resolution Agreement, however, I recognize that I have 30 days to opt-out of that Dispute Resolution Agreement. **Absent the exercising of my right to opt-out of that Dispute Resolution Agreement . . . the Company and I agree to be bound by its terms. . . . MY SIGNATURE BELOW CERTIFIES THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS SET FORTH ABOVE.**

(Doc. # 16-6)(emphasis added).

In the next sequential step on the employee on-boarding process, Ferrara reviewed a section titled "Opt-Out of Dispute Resolution Agreement," in which she was directed to "please select from the dropdown below whether you wish to participate or opt-out of the Dispute Resolution Agreement." (Id.). Ferrara denoted her choice to participate in the Dispute Resolution Agreement, rather than to opt-out. (Id.).

Ferrara's blanket denial that the electronic signature that appears on the Agreement is not her own is rejected. The court reached the same result in Day v. Persels & Assocs, LLC, No. 8:10-cv-2463-T-33TGW, 2011 U.S. Dist. LEXIS 49231 (M.D. Fla. May 9, 2011). There, an employee sought to avoid arbitration but the record contained an arbitration agreement with the plaintiff's electronic signature attached. Id. at *8. Among other contentions, the plaintiff argued that "she never entered into an arbitration

9

agreement." Id. at *6. The court, having considered a detailed affidavit describing all the documents the plaintiff signed when she began her employment, found that the plaintiff "undoubtedly" accepted the agreement to arbitrate and the "plaintiff [had] made no attempt to show that such an acceptance [was] ineffective." Id. at *10.

This Court likewise rejects Ferrara's generic denial that she signed the Dispute Resolution Agreement. That Agreement is before the Court and it bears her electronic signature.

**B.  Dispute Resolution Agreement is Valid and Applies**

The Court finds that the parties agreed to arbitrate. The next step is to evaluate the Dispute Resolution Agreement and to determine whether the claims brought in this action are covered by the Agreement.

The Dispute Resolution Agreement obligates the parties to arbitrate claims under the FAA, stating: "This Agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16)." (Doc. # 16-3 at 43). The Agreement states:

> The Dispute Resolution Agreement covers Luxottica and you, regardless of your hire date, unless you opt-out on the form provided herein. Except as it otherwise provides, this Agreement applies, without limitation, to disputes with any individual (including Luxottica's employees,

agents, supervisors, officers or directors) or entity (including any company affiliated with Luxottica, its parent(s) or subsidiaries, if any) arising out of or related to the employment relationship or the termination of that relationship.

(Doc. # 16-3 at 44). The Dispute Resolution Agreement then provides a list of claims that are covered by the Agreement, including FMLA and ERISA claims. (Id.).

"Courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1988). Such a "twist" is unnecessary to compel arbitration in this case. Ferrara's claims fall squarely within the ambit of the Dispute Resolution Agreement, and she did not opt out of the Agreement. The Agreement before the Court is a valid agreement to arbitrate between the parties.

Next, the Court must determine whether legal constraints external to the parties' Agreement foreclose arbitration of the claims. Here, Ferrara has not made any arguments regarding unconscionability, and the Court's careful review of the file reveals no reason to foreclose arbitration. Notably, Ferrara was provided with the opportunity to opt out of the Dispute Resolution Agreement,

11

which strongly supports the overall fairness of the Agreement. See Hopkins v. World Acceptance Corp., 798 F. Supp. 2d 1339, 1346 (N.D. Ga. 2011)("When a party challenges an arbitration agreement that contains an opt-out provision and fails to opt-out, her unconscionability argument is diluted because the provision was not offered on a take-it-or-leave-it basis.").

Lastly, "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002). Likewise,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had.

9 U.S.C. § 3 (2013). Thus, the present lawsuit will be stayed, rather than dismissed, pending the arbitration process.

### III. Conclusion

After a careful review of the arguments presented, the Court determines that the Dispute Resolution Agreement encompasses all of the claims of this case. Finding no legal constraints to foreclose arbitration, the Court concludes that arbitration is now appropriate, and this case will be stayed pending the completion of the arbitration process.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Luxottica Retail North America Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 16) is **GRANTED** to the extent that the Court compels the parties to participate in the arbitration process.

(2) This case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the completion of the arbitration process.

(3) The parties are directed to file a status report regarding the arbitration process on April 25, 2018, and every 90 days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida on this 26th day of January, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE